IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| JEFFREY SOLOMON K. CHIJIOKE-UCHE, | : | CIVIL ACTION |
| | : | NO. 20-216 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS, et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          August 3, 2022


## I.    INTRODUCTION

In this action pro se Plaintiff Jeffrey Solomon K. Chijioke-Uche[1] ("Plaintiff") alleges that Defendant General Motors, LLC ("General Motors") and Chapman Chevrolet, LLC ("Chapman Chevrolet") (collectively, "Defendants") breached their warranty agreements with Plaintiff. Plaintiff specifically brings claims against Defendants for breach of contract (Counts I and II), breach of the express warranty (Count III), violations of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count IV), and violations of the Magnuson-Moss Warranty Improvement Act (Count V).

---

[1]     The docket incorrectly lists Plaintiff's name as "Solomon Jeffrey K. Chijioke-Uche."

The parties have filed cross-motions for summary judgment, which are now ripe before this Court.

## II.  FACTUAL BACKGROUND

### A. Plaintiff Purchases the Vehicle

On May 27, 2017, Plaintiff purchased a Buick Encore (the "vehicle") from Chapman Chevrolet. Plaintiff was to obtain title to the vehicle once he paid the balance of $20,646.39.

At the time that Plaintiff purchased the vehicle, Chapman Chevrolet provided Plaintiff with a "Retail Installment Sale Contract" (the "Sales Contract"), which the parties signed on May 27, 2017. See Ex. R1, ECF No. 53-47. However, the Sales Contract explicitly provides that "[u]nless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or fitness for a particular purpose." Id. at 2.

Plaintiff also received a "2014 Buick Limited Warranty and Owner Assistance Information" (the "Limited Warranty") from General Motors. The Limited Warranty provides that it applies to "vehicles registered in the United States" and it covers

> repairs to correct any vehicle defect, not slight noise,
> vibrations, or other normal characteristics of the
> vehicle related to materials or workmanship occurring
> during the warranty period. Needed repairs will be
> performed using new, remanufactured, or refurbished

2

> parts required in the timing belt service replacement
> procedure are covered until the first scheduled
> maintenance interval.

Ex. E, ECF No. 46-5 at 8-9 (emphasis added). The Limited

Warranty also provides that:

> Any implied warranty of merchantability or fitness for
> a particular purpose applicable to this vehicle is
> limited in duration to the duration of this written
> warranty. Performance of repairs and needed adjustments
> is the exclusive remedy under this written warranty or
> any implied warranty. GM shall not be liable for
> incidental or consequential damages, such as, but not
> limited to, lost wages or vehicle rental expenses,
> resulting from breach of this written warranty or any
> implied warranty.

Id. at 16.

### B. Issues with the Vehicle's Turbocharger

On August 30, 2018, over a year after Plaintiff purchased

the vehicle, Plaintiff brought it to Chapman Chevrolet with a

complaint that the vehicle's acceleration was sluggish and the

"check-engine" light was on. Chapman Chevrolet diagnosed the

vehicle and told Plaintiff that the vehicle needed a new

turbocharger. A representative at Chapman Chevrolet informed

Plaintiff that repair of the turbocharger was covered by General

Motors' Limited Warranty and that Plaintiff should contact

General Motors. Plaintiff drove his car home that day.

On that same day, Plaintiff contacted General Motors to

request a new turbocharger. A General Motors representative

informed Plaintiff that the turbocharger was on a national

backorder. Plaintiff continued to reach out to General Motors throughout September 2018 but was informed the turbocharger was still on a backorder.

On October 7, 2018, Plaintiff was involved in an accident while driving the vehicle. Plaintiff maintains that the accident was caused by the failed turbocharger, though Plaintiff did not have the body damage to the car assessed. Plaintiff then contacted General Motors who told Plaintiff not to drive the vehicle until the turbocharger could be replaced. Plaintiff kept the vehicle at his residence during the majority of October and November 2018. During that time, Plaintiff reached out to General Motors again and was informed that the turbocharger was still on a backorder.

In December 2018, a General Motors representative instructed Plaintiff to leave his car at a local Chapman auto dealership, which happened to be Chapman Ford,[2] until the turbocharger could be replaced. On December 27, 2018, pursuant to the directive, Plaintiff had the vehicle towed to Chapman Ford. Over the next several months, Plaintiff contacted General Motors several times about delivering the turbocharger to

---

[2]    Chapman Ford is not a party to this action. Chapman Ford was presumably the closest Chapman auto dealership to Plaintiff's residence. Plaintiff's claims in this case are against Chapman Chevrolet.

Chapman Ford and was told the turbocharger was still on national backorder. Plaintiff left his car at Chapman Ford for nearly six months. While the car remained at Chapman Ford, Plaintiff paid for a rental car.

General Motors never repaired the turbocharger and the vehicle remained at Chapman Ford. On April 29, 2019, a Chapman Ford representative contacted non-party General Motors Financial, an entity distinct from General Motors, and stated that Plaintiff had left the vehicle at the Chapman Ford facility. The Chapman Ford representative indicated that storage charges were accumulating and remained unpaid. Because the storage charges were accumulating and remained unpaid, pursuant to a financing agreement between Plaintiff and General Motors Financial, Chapman Ford contacted General Motors Financial, and General Motors Financial repossessed the vehicle.[3]

**C. Procedural History**

Plaintiff brings claims against Defendants for breach of contract against Defendants (Counts I and II), breach of the express warranty (Count III), violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-

---

[3]   On May 6, 2019, General Motors Financial repossessed and later sold Plaintiff's vehicle. Plaintiff sued General Motors Financial in a separate suit, Civ. No. 19-4006 (E.D. Pa.).

2(4), (Count IV), and violations of the Magnuson-Moss Warranty Improvement Act, 15 U.S.C. § 2310(d)(1), (Count V).

The parties previously attended a court-annexed arbitration hearing. Following the arbitration and Plaintiff's request for trial de novo, the Court ordered the parties to submit cross-motions for summary judgment. The motions are now ripe before the Court.[4]

## III. LEGAL STANDARD

Summary judgment is "appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific

---

[4]     Plaintiff's initial counsel filed the amended complaint. However, Plaintiff's counsel then filed a motion to withdraw, which the Court granted on June 3, 2020. Since then, Plaintiff has proceeded pro se.

facts showing that there is a genuine issue for trial."
Anderson, 477 U.S. at 250. At the summary judgment stage, the
Court must view the facts "in the light most favorable to" the
nonmoving party and "draw all reasonable inferences in favor" of
that party. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir.
2015).

The guidelines governing summary judgment are identical
when addressing cross-motions for summary judgment. See Lawrence
v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). When
confronted with cross-motions for summary judgment, "[t]he court
must rule on each party's motion on an individual and separate
basis, determining, for each side, whether a judgment may be
entered in accordance with the Rule 56 standard." Schlegel v.
Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa.
2003) (alteration in original) (quoting 10A Charles A. Wright,
Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure § 2720 (3d ed. 1998)).

A document filed pro se is to be "liberally construed" and
"a pro se complaint, however inartfully pleaded, must be held to
less stringent standards than formal pleadings drafted by
lawyers." Erickson v. Pardus, 551 U.S. 89, 94
(2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). In
addition, when considering a motion in a pro se plaintiff's
proceedings, a court must "apply the applicable law,

irrespective of whether a pro se litigant has mentioned it by name." Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999). However, on a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Ray v. Fed. Ins. Co., No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007) (Robreno, J.). "[M]erely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (Robreno, J.).

## IV.  DISCUSSION

As noted, Plaintiff brings claims against Defendants for breach of contract (Counts I and II), breach of warranty, (Count III), for violations Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count IV), and for violations of the Magnuson-Moss Warranty Improvement Act (Count V).

Chapman Chevrolet generally argues that it did not provide Plaintiff with a warranty agreement, and so the claims premised on the existence of a warranty against Chapman Chevrolet must fail. General Motors argues that its Limited Warranty agreement excludes the damages that Plaintiff seeks. The parties have filed cross-motions for summary judgment with respect to these

claims. Plaintiff's claims as to each defendant will be
addressed in turn.

### A. Breach of Contract/Breach of Warranty

Plaintiff premises his breach of contract claims against
Defendants on allegations that Defendants breached warranty
agreements with Plaintiff. In Counts I and II of his amended
complaint, Plaintiff alleges that Chapman Chevrolet and General
Motors breached their contracts with Plaintiff by failing to
provide Plaintiff with a vehicle fit for its intended use and by
providing warranties Defendants did not intend to fulfill. Am.
Compl. ¶¶ 57, 68. In Count III of his amended complaint,
Plaintiff alleges that both Defendants breached express warranty
agreements with Plaintiff because the vehicle did not conform to
the affirmations made by Defendants with respect to the
vehicle's intended use. See id. ¶¶ 72-73. Here, Plaintiff's
claims for breach of contract and breach of warranty are
duplicative of one another. Under these circumstances, the Court
construes Plaintiff's claims against Defendants as a single
claim for breach of warranty against each defendant. See,
e.g., Pansini v. Trane Co., No. 17-3948, 2019 WL 1299036, at *8
(E.D. Pa. Mar. 21, 2019), (collecting cases dismissing breach of
contract claims duplicative of breach of warranty claims).

1. <u>Claim Against Chapman Chevrolet</u>

To establish a claim for breach of warranty under Pennsylvania law, Plaintiff "must establish that a breach of warranty occurred and that the breach was the proximate cause of specific damages sustained." <u>Ebert v. C.R. Bard, Inc.</u>, 459 F. Supp. 3d 637, 648 (E.D. Pa. 2020) (citing <u>Samuel-Bassett v. Kia Motors Am. Inc.</u>, 34 A.3d 1, 35 (2011)). There must have been an express warranty "and the warranty must have become part of the 'basis of the bargain.'" <u>Yurcic v. Purdue Pharma, L.P.</u>, 343 F. Supp. 2d 386, 394 (M.D. Pa. 2004) (quoting <u>Boyd v. Johnson & Johnson</u>, No. 965, 2002 WL 372959, at *2-*3 (Pa. Comm. Pl. Jan. 22, 2002)).

Chapman Chevrolet contends that it did not provide a warranty agreement so Plaintiff's claim must fail. When Plaintiff purchased the car, Chapman Chevrolet gave Plaintiff a copy of General Motors' Limited Warranty agreement. As noted, this warranty was provided by the manufacturer, General Motors, not Chapman Chevrolet.

In response, Plaintiff points to the Sales Contract which Plaintiff and Chapman Chevrolet signed on May 27, 2017, the day Plaintiff purchased the vehicle. <u>See</u> Ex. R1, ECF No. 53-47. However, the Sales Contract explicitly provides that "[u]nless the Seller [Chapman Chevrolet] makes a written warranty, or enters into a service contract within 90 days from the date of

10

this contract, the Seller makes no warranties, express or
implied, on the vehicle, and there will be no implied warranties
of merchantability or fitness for a particular purpose." Id. at
2. In his opposition to Chapman Chevrolet's motion, and in his
own motion for summary judgment, Plaintiff fails to point to any
evidence that the parties later entered into a "service contract
within 90 days," or evidence that the parties entered into a
related warranty agreement.

The Sales Contract explicitly disclaims the existence of a
warranty. Plaintiff has not contested the existence of the
disclaimer. Thus, there is no evidence that Chapman Chevrolet
breached a warranty agreement. Accordingly, the Court will grant
Chapman Chevrolet's motion as related to the breach of warranty
claim and will deny Plaintiff's cross-motion with respect to
this claim.

### 2. Claim Against General Motors

Plaintiff has alleged that General Motors breached a
provision of the Limited Warranty agreement. The Limited
Warranty provides that General Motors would perform "repairs to
correct any vehicle defect" and that "[p]erformance of repairs
and needed adjustments is the exclusive remedy under this
written warranty or any implied warranty." See Ex. E, ECF No.
46-5 at 9, 16. The Limited Warranty also includes a limitation
of liability clause which provides that General Motors "shall

11

not be liable for incidental or consequential damages, such as,
but not limited to, lost wages or vehicle rental expenses,
resulting from breach of this written warranty or any implied
warranty." Id. at 16 In its motion for summary judgment, General
Motors contends that (a) General Motors was not obligated to
repair the vehicle, and (b) Plaintiff cannot recover the damages
he seeks. General Motors' arguments will be addressed in turn.

            a. General Motors was Obligated to Repair the
              Turbocharger

General Motors first argues that Plaintiff cannot prevail
because Plaintiff cannot show that General Motors was obligated
to repair the vehicle. The Limited Warranty agreement provides
that General Motors would only provide repairs to correct a
"vehicle defect." Id. at 9. General Motors contends that because
Plaintiff was involved in a car accident with the vehicle in
October 2018, the turbocharger's failure may have been a
consequence of the car accident rather than a product defect.
General Motors contends that, "[w]hen a plaintiff relies upon
circumstantial evidence that the product is defective for the
purposes of the implied warranty of merchantability, he must do
more than merely prove a defect. Plaintiff must further negate
abnormal use and reasonable secondary causes." Hoffman v. Paper
Converting Machine Co., 694 F. Supp. 2d 359, 373 (E.D. Pa. 2010)
(emphasis added). General Motors, relying on Hoffman, avers that

because Plaintiff has not retained an expert, and because Plaintiff cannot point to any evidence to support that the issue with the turbocharger was the result of a product defect, rather than a consequence of the car accident, Plaintiff cannot maintain his claim.

The Hoffman standard is inapposite to this case. Hoffman applies to claims involving an alleged breach of the implied warranty of merchantability. See id. However, Plaintiff has not brought a claim for a breach of the implied warranty of merchantability. Instead, Plaintiff alleges that General Motors breached a provision of its Limited Warranty, an express warranty, which provides that General Motors would repair "any vehicle defect." Thus, the key question is whether the turbocharger's failure would be considered a "defect" under the terms of the Limited Warranty.

The Limited Warranty does not define defect, but merely indicates that a "defect" does not include "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." Ex. E, ECF No. 46-5 at 8. And, more importantly, the Limited Warranty explicitly provides that General Motors will cover repairs of the engine's turbocharger. See id.

13

The record shows that when Plaintiff had his vehicle assessed by Chapman Chevrolet in August 2018, Chapman Chevrolet's technicians determined that the "turbocharger need[ed] replacement" and that the turbocharger was covered under "[General Motors'] . . . warranty." Ex. S5, ECF No. 52-52. This assessment was made <u>before</u> Plaintiff got into the accident and, under the terms of the Limited Warranty agreement, General Motors was obligated to repair the turbocharger. Accordingly, General Motors' argument that it was not obligated to repair the turbocharger fails.

b. Whether Plaintiff Can Recover Damages

As noted, the Limited Warranty provides that "[p]erformance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty." Ex. E, ECF No. 46-5 at 16. The Limited Warranty agreement also provides that General Motors "shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty." <u>Id.</u>

Limitations clauses are generally valid and enforceable because, under Pennsylvania's Commercial Code, an "agreement may . . . limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and

14

replacement of nonconforming goods or parts." 13 Pa. C.S. § 2719
(a)(1); see also Caudill Seed & Warehouse Co., Inc. v. Prophet
21, Inc., 123 F. Supp. 2d 826, 829 (E.D. Pa. 2000) ("[U]nder
Pennsylvania law, limitation of liability clauses . . .
generally are valid and enforced by the courts.") (citing Valhal
Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 204 (3d Cir.
1995)).

   Here, Plaintiff seeks to recover damages relating to
expenses for a rental car, taxicab, ride shares, parking
tickets, and other related costs. General Motors contends that
the Limited Warranty agreement provides that General Motors
shall not be liable for incidental or consequential damages.
General Motors avers that Plaintiff can only recover those
damages if the Limited Warranty's limitation of damages
provision is found to be unenforceable.

   As General Motors points out, a clause that limits damages
may be deemed unenforceable if the Plaintiff can show that the
exclusive remedy of repair provided for in the Limited Warranty
agreement failed for its essential purpose. See Caudill, 123 F.
Supp. 2d at 833 (holding that damages limitations may be
rendered inoperative if the exclusive remedy fails for its
essential purpose); see also Plexicoat Am., LLC v. PPG
Architectural Finishes, Inc., No. 13-3887, 2016 WL 11695868, at
*8 (E.D. Pa. Feb. 18, 2016) (same).

Under Pennsylvania's Commercial Code, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." 13 Pa. C.S. § 2719(b). The comment to section 2719(b) explains that "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of its bargain, it must give way to the general remedy provisions of this Article." 13 Pa. C.S. § 2719(b), cmt. 1. Courts have interpreted this to mean that "a finding that the essential purpose of a remedy was not satisfied typically arises 'when the exclusive remedy involves replacement or repair of defective parts, and the seller because of his negligence in repair or because the goods are beyond repair, is unable to put the goods in warranted condition.'" Caudill, 123 F. Supp. 2d at 829 (quoting New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 564 A.2d 919, 929 (Pa. Super. Ct. 1989)). "'[A] delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair,' and the buyer does not need to demonstrate negligence or bad faith on the part of the seller." Al's Auto Inc. v. Hollander, Inc., No. 08-731, 2010 WL 3855251, at *4 (E.D. Pa. Oct. 1, 2020) (quoting Chatlos Sys., Inc. v. National Cash Register Corp., 635 F.2d 1081, 1085

16

(3d Cir. 1980)); see also Demorato v. Carver Boat Corp., 304 F. App'x 100, 103 (3d Cir. 2008) (same).

General Motors maintains that Plaintiff cannot point to any evidence to show that the remedy failed for its essential purpose here. General Motors argues that the evidence shows that when Plaintiff first brought the vehicle to Chapman Chevrolet for inspection on August 30, 2018, Plaintiff was told to return once the turbocharger was available for installation, so Plaintiff drove the vehicle home that day. See Pl. Dep. 33: 5-6, ECF No. 46-3. After Plaintiff got into an accident on October 7, 2018, he contacted General Motors, and General Motors told Plaintiff not to drive the vehicle until the turbocharger could be replaced. On December 6, 2018, General Motors directed Plaintiff to take the vehicle to the nearest dealership (at Chapman Ford) while it awaited repair. Later that month, Plaintiff had his car towed to Chapman Ford. After Plaintiff left his car at Chapman Ford, storage charges began accumulating; because Plaintiff did not pay the storage fees, Chapman Ford contacted Plaintiff's financer, General Motors Financial, and General Motors Financial repossessed the vehicle. See Pl. Dep at 62: 15-16; 63: 1-4. ECF No. 46-3 (noting the vehicle had been repossessed). General Motors argues that because Plaintiff's car was repossessed, this extinguished General Motors' ability and obligation to repair the vehicle.

17

In response, Plaintiff points to evidence that Plaintiff repeatedly contacted General Motors about the new turbocharger between August 2018 and May 2019, and Plaintiff left the vehicle at Chapman Ford for over five months because a new turbocharger did not become available. See Ex. E1, ECF No. 52-4; Ex. E2, ECF No. 52-5; Ex. E3, ECF No. 52-6; Ex. E4, ECF No. 52-7; Ex. E5, ECF No. 52-8; Ex. E6, ECF No. 52-9; Ex. E7, ECF No. 52-10. Plaintiff reached out to General Motors numerous times but was repeatedly told by a General Motors representative that General Motors could not complete the repair because the turbocharger, which was under warranty, was on a national backorder. See Ex. E1, ECF No. 52-4; Ex. E2, ECF No. 52-5; Ex. E6, ECF No. 52-9.

As noted, a delay in supplying the remedy may be sufficient to show that the remedy failed for its essential purpose. See Al's Auto Inc., 2010 WL 3855251, at *4. Plaintiff's vehicle was ultimately repossessed over ten months after Plaintiff first informed General Motors a new turbocharger was necessary, and five months after Plaintiff left his car at Chapman Ford for repair. Thus, there is a dispute of fact as to whether General Motors' delay is sufficient to show the remedy failed for its essential purpose.[5]

---

[5]    Plaintiff did not explicitly plead that the remedy failed for its essential purpose. However, as General Motors introduced this argument and was given a full opportunity to brief the issue, the Court will still consider it here.

Plaintiff has also filed a cross-motion with respect to this claim. In Plaintiff's motion, Plaintiff again raises the argument that Defendant breached the terms of the warranty because, for ten months, Defendant failed to repair the vehicle. See Pl. Mot., ECF No. 48 at 102. Though Plaintiff does not explicitly state that, under the Limited Warranty, the essential purpose of the remedy was not satisfied, when construing the pro se Plaintiff's arguments liberally, Plaintiff essentially argues that the remedy failed for its essential purpose because of General Motors' delay. In response, General Motors points to the same arguments it raises in its own motion and contends that General Motors was absolved of its requirement to repair the vehicle. Thus, it is up to a jury to decide whether General Motors' delay caused the limited remedy to fail for its essential purpose, and so Plaintiff's cross-motion will also be denied with respect to this claim.

If a jury finds that the remedy failed for its essential purpose, the Limited Warranty's provision that limits incidental and consequential damages may not be enforceable. As noted, the Limited Warranty provides that General Motors "shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty." Ex. E, ECF No. 46-5 at 16. The Third Circuit has never

definitively opined on whether a warranty's term "disclaiming
incidental and consequential damages is automatically
ineffective, without an additional unconscionability inquiry, if
the contractual remedy fails in its essential purpose." Al's
Auto, 2010 WL 3855251, at *5. The Third Circuit has generally
enforced damages provisions unless they were found to be
unconscionable. See Chatlos, 635 F.2d at 1083. However, a court
in this district has held that "parties intended the validity of
the consequential damage exclusion to depend on the
effectiveness of the limited remedy; if the limited remedy
fails, so does the consequential damage exclusion." Caudill, 123
F. Supp. 2d at 832 (citation omitted); see also Plexicoat Am.,
LLC, 2016 WL 11695868, at *8 (applying Caudill and finding the
same); Al's Auto Inc., 2010 WL 3855251, at *5-*6 (same). Thus,
following Caudill, if the jury were to find that the remedy
failed for its essential purpose, Plaintiff may then be entitled
to consequential and incidental damages.

General Motors next argues that even if the Limited
Warranty's damages provision is found to be unenforceable,
Plaintiff is still unable to show that the damages he seeks are
the foreseeable consequences of General Motors' breach. General
Motors contends that under Pennsylvania law, the proper measure
of damages for breach of warranty is "the difference at the time
and place of acceptance between the value of the goods accepted

20

and the value they would have had if they had been as warranted,
unless special circumstances show proximate damages of a
different amount." See 13 Pa. C.S. § 2714(b). However, the same
statute provides that a plaintiff may also recover incidental
and consequential damages. Id. at § 2714(c).[6]

Plaintiff seeks to recover damages related to expenses for
a rental car, taxi fare, ride shares, parking tickets, trauma
from the car accident, and lost wages. Under Pennsylvania law,
consequential damages must be "foreseeable," such that they were
contemplated by "the parties at the time they made the contract"
as those damages will be awarded to put the victim of the breach
in the same position as if there had been performance. Ferrer v.

---

[6]    13 Pa. C.S. § 2715 provides as follows:

(a) Incidental damages.--Incidental damages resulting from the
breach of the seller include:
     (1) expenses reasonably incurred in inspection, receipt,
     transportation and care and custody of goods rightfully
     rejected;
     (2) any commercially reasonable charges, expenses or
     commissions in connection with effecting cover; and
     (3) any other reasonable expense incident to the delay or
     other breach.

(b) Consequential damages.--Consequential damages resulting from
the breach of the seller include:
     (1) any loss resulting from general or particular
     requirement
     s and needs of which the seller at the time of contracting
     had reason to know and which could not reasonably be
     prevented by cover or otherwise; and
     (2) injury to person or property proximately resulting from
     any breach of warranty.

Trustees of the Univ. of Pennsylvania, 825 A.2d 591, 610 (Pa. 2002) (citation omitted); see also Fort Washington Resources, Inc. v. Tannen, 901 F. Supp. 932, 943 (E.D. Pa. 1995) ("Generally, a breaching party is liable only for those ordinary damages that would naturally result from the breach, and is liable for the consequential damages only if 'it is shown specifically that the defendant had reason to know of the circumstances responsible for the special damage and to foresee the injury.'") (quoting Ebasco Servs., Inc. v. Pennsylvania Power & Light Co., 460 F. Supp. 163, 213 n.62 (E.D. Pa. 1978)).

Here, expenses relating to the cost of a rental car, taxi fare, and ride shares were likely foreseeable as Plaintiff expected to be able to use his vehicle and was forced to find other modes of transportation. However, damages for costs incurred from receiving parking tickets, trauma from the accident, and lost wages are likely not foreseeable consequences.[7] It will be for a jury to determine if the damages Plaintiff sustained were foreseeable.

For the foregoing reasons, the Court will deny both parties' motions with respect to the breach of warranty claim against General Motors.

---

[7]   A jury may also consider whether Plaintiff properly mitigated the damages he suffered.

**B. Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

Plaintiff alleges that Chapman Chevrolet and General Motors violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL") by "using deceptive representations in connection with goods or services," in violation of 73 P.S. 201-2(4)(iv), and by "failing to comply with the terms of any written guarantee or warranty given to the buyer at the time the contract for the purchase of goods and services is made" in violation of 73 P.S. 201-2(4) (xiv). Am Compl. ¶ 69.

### 1. Claim Against Chapman Chevrolet

With respect to Plaintiff's allegation that Chapman Chevrolet violated 73 P.S. 201-2(4) (xiv) of the UTPCPL, Chapman Chevrolet argues it did not provide a written guarantee or warranty agreement to Plaintiff. Again, Plaintiff points to the Sales Contract which explicitly disclaims the existence of a warranty. Plaintiff does not point to any evidence in his response or in his cross-motion to support this allegation. Accordingly, the Court will grant Chapman Chevrolet's motion and deny Plaintiff's cross-motion with respect to this claim.

Plaintiff does not address the allegation that Chapman Chevrolet used "deceptive representations" in connection with the sale of the vehicle in violation of 73 P.S. 201-2(4)(iv) in

his response or in his cross-motion. Accordingly, the Court will grant Chapman Chevrolet's motion and deny Plaintiff's cross-motion with respect to this claim.

### 2. Claim Against General Motors

General Motors argues that Plaintiff's claim under the UTPCPL fails because Plaintiff cannot show he is entitled to damages. General Motors contends that Plaintiff must show he suffered an "ascertainable loss" distinct from Plaintiff's breach of contract/warranty claim. See Solarz v. DaimlerChrysler Corp., No. 2033 APRILTERM 2001, 2002 WL 452218, at *6 (Pa. Comm. Pl. March 13, 2002) ("The type of injury necessary to sustain a claim for violations of the UTPCPL is different from the type needed to sustain a claim for breach of warranties"). In his response, and in his cross-motion, Plaintiff does not contend that he suffered ascertainable losses that are distinct from the damages he suffered in connection with his breach of warranty claim. Thus, the Court will grant General Motors' motion and deny Plaintiff's cross-motion with respect to this claim.

### C. Violation of the Magnuson-Moss Warranty Improvement Act

Plaintiff alleges that both Defendants violated the Magnuson-Moss Warranty Improvement Act, which provides that a "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written

warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

### 1. Claim Against Chapman Chevrolet

This claim is premised on the existence of a warranty agreement between Chapman Chevrolet and Plaintiff. Again, Chapman Chevrolet disclaims the existence of a warranty agreement and Plaintiff is unable to point to any evidence to support the existence of a warranty in his response or in his cross-motion. Accordingly, the Court will grant Chapman Chevrolet's motion and deny Plaintiff's cross-motion with respect to this claim.

### 2. Claim Against General Motors

General Motors did not move for summary judgment on this claim. In his cross-motion, Plaintiff contends that he suffered damages due to General Motors' failure to comply with an obligation under the warranty agreement, in violation of 15 U.S.C. § 2310(d)(1). However, Plaintiff has provided no substantive reasons as to why the Court should grant his cross-

motion.[8] Accordingly, the cross-motion will be denied with respect to this claim. Thus, the claim will proceed to trial.[9]

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Chapman Chevrolet's motion for summary judgment and deny Plaintiff's cross-motion against Chapman Chevrolet.[10] The Court will deny General Motors' motion for summary judgment with respect to Plaintiff's claims for breach of warranty and violation of the Magnuson-Moss Warranty Improvement Act, but will grant General Motors' motion with respect to the Unfair Trade Practices and Consumer Protection Law claim. In turn, the Court will deny Plaintiff's cross-motion against General Motors.

---

[8]    Plaintiff also contends that the Limited Warranty agreement was "deceptive" in violation of the Magnuson-Moss Warranty Improvement Act However, under the statute, the provision involving deceptive warranties relates to the Attorney General and Federal Trade Commission's ability to enjoin a "warrantor" from making a deceptive warranty. This does not relate to Plaintiff's private right of action and is not the basis for a separate claim.

[9]    The Court notes that if Plaintiff prevails on this claim, Plaintiff may obtain the same relief he would be entitled to if he prevails on his breach of warranty claim, see 15 U.S.C. § 2310(d)(1), in addition to attorneys' fees. See id. § 2310(d)(2).

[10]    As there are no viable claims against Chapman Chevrolet, it will be dismissed from this action. Chapman Chevrolet has filed a cross-claim against General Motors for indemnification. See Chapman Chevrolet Answer ¶ 123, ECF No. 19. Because Chapman Chevrolet cannot be held liable, the cross-claim will be dismissed.

Thus, only the claims that General Motors breached its warranty with Plaintiff and violated the Magnuson-Moss Warranty Improvement Act will proceed to trial. An appropriate order follows.